GREGORY, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority’s conclusion that Deputy Farrow did not seize Rodgers within the meaning of the Fourth Amendment. Accordingly, I concur that this officer is entitled to qualified immunity. However, because I cannot conclude as a matter of law that Officer Waters’ deployment of his police dog was objectively reasonable under the circumstances, I dissent from the majority’s holding that this defendant is also entitled to qualified immunity.
“An attack by an unreasonably deployed police dog in the course of a seizure is a Fourth Amendment violation.” Vathekan v. Prince George’s County, 154 F.3d 173, 178 (4th Cir.1998). As the majority recognizes, this court has twice addressed the issue of whether releasing a police dog without issuing a prior warning constituted unreasonable deployment. See id.; Kopf v. Wing, 942 F.2d 265 (4th Cir.1991). In both cases, this court concluded that it did. In this case, it is undisputed that Officer Waters deployed his police dog against the decedent without issuing a prior warning. The majority, however, distinguishes the circumstances faced by Officer Waters in this case from those faced by the officers in Vathekan and Kopf, apparently on the grounds that Waters, unlike the officers in those cases, faced an imminent threat of harm. See Op. at 182. Accordingly, the majority concludes that it was not unreasonable for Waters to deploy his dog without prior warning. In my view, however, Waters did not face an imminent threat from Rodgers, and, thus, I cannot meaningfully distinguish the circumstances of this case from those of Kopf
Although the majority provides a brief summary of the facts of Kopf I believe that a more complete recitation is required. After receiving a radio report of an armed robbery, police officers initiated a high-speed pursuit of the vehicle in which the suspects were riding. Kopf, 942 F.2d at 266. Shortly thereafter, the suspects abruptly stopped their car and fled on foot. Id. After a cursory search of the vehicle failed to uncover the handgun used in the robbery, the officers reasonably concluded that the suspects likely were armed. Id. Although officers apprehended one of the three suspects during the ensuing foot pursuit, two suspects were able to conceal themselves behind a shed in the backyard of a residential neighborhood. *185 Id. The suspects’ hiding place “was an extremely narrow passage between the shed’s wall and a fence.” Id. After the officers located these defendants and surrounded the shed, one officer deployed a police dog into the passageway without a forewarning. Before the officers entered the passageway, the police dog severely mauled the suspects. See id. at 267.
In reviewing the propriety of the district court’s grant of summary judgment in favor of the officer who had deployed the dog, this court concluded that he was not entitled to qualified immunity. Notwithstanding the officer’s reasonable belief that the suspects were armed, the court concluded that the officer’s failure to provide a warning (and therefore an opportunity to surrender) before deploying the dog was unreasonable. See id. at 268. As the majority recognizes, central to this conclusion was this court’s finding that the suspects were surrounded and unable to escape. See id.
The majority relies on Officer Waters’ knowledge of the circumstances leading up to the high speed pursuit as well as his statements regarding his perceptions of Rodgers once that pursuit ended to conclude that Waters acted reasonably in deploying his police dog without warning. However, the evidence in the record, when viewed in the light most favorable to the decedent, portrays a scene indistinguishable from the one faced by the officers in Kopf.
The video of this incident indicates that several officers had positioned themselves around the parking lot before Rodgers exited his vehicle. Thus, as in Kopf the decedent was surrounded and unable to escape. However, the majority concludes that Waters, unlike the officers in Kopf faced an imminent threat of harm. In so doing, the majority points to Waters’ assertions that he heard someone yell “Gun!”, that he observed that Rodgers’ right hand was out of view under his shirt, and that he (Waters) was so close to the decedent that he had no choice but to deploy his dog without warning. See Op. at 182. Viewing the evidence in the light most favorable to the decedent, however, I believe that the majority’s reliance on these assertions is misguided.
First, as the majority notes, Officer Waters gave two distinctly different versions of what he saw in Rodgers’ hand before he deployed the dog. In his initial SBI statement taken shortly after the shooting, Waters asserted that he did not see Rodgers’ right hand, but that “it may have been up under his shirt.” J.A. 345. Contrarily, in a sworn affidavit, Waters later claimed that Rodgers had “advanced toward [him] with his handgun drawn in a threatening manner.” J.A. 135. The patent inconsistency between these two statements undermines the credibility of Waters’ assertions as to the imminent threat posed by the decedent.
Second, Officer Waters’ and the other officers’ actions, as portrayed on the video, provide strong evidence that Rodgers did not have a gun in his hand prior to being engaged by the dog. Beginning at 1:51:01, Officer Waters, without drawing his gun, can be seen rushing across the parking lot to within a few feet of where Rodgers is standing, hurling the dog towards him, and then continuing to advance until he is within inches of Rodgers. Four seconds later, at 1:51:05, Officer Waters, who is now standing in front of Rodgers watching the dog attack, begins to back away from Rodgers (and the dog). Officer Waters does not draw his gun until 1:51:06, when Rodgers, who at this point is desperately attempting to extricate the dog from his leg, reaches towards his waistband. Had Waters actually heard his fellow officer shout “Gun!” or turned around to see Rodgers pointing a weapon at him, as he later claimed, it is doubtful that the officer *186 would have approached and stood in front of Rodgers in such a vulnerable manner. Further, the video shows that neither Officer McFarland or Deputy Farrow has his gun raised at Rodgers as Officer Waters rushes towards him with the dog. Officer McFarland, who is crouched on the ground with his gun in his right hand, does not raise his weapon at Rodgers until Waters releases the dog (1:51:03), and Deputy Farrow does not draw and aim his gun at Rodgers until five seconds after McFarland (1:51:08). This is further evidence that Rodgers did not have a gun in his hand prior to Waters’ release of the dog.
Finally, Waters’ contention that he was so close to Rodgers that he had no choice but to deploy the dog without warning is belied by his actions and previous statement. As noted above, the video shows Waters advancing across the parking lot to within two or three feet of Rodgers before releasing the dog. Further, Waters initially asserted in his SBI statement that, while the high speed pursuit was still in progress, he had radioed the other officers to warn them that he intended to deploy the dog against Rodgers once the pursuit ended. See J.A. 344. This statement further undermines Waters’ claim that he made a split-second decision to deploy the dog based on his close proximity to Rodgers.
In sum, the video portrays a scene where a police officer deployed his dog without warning against a suspect who was completely surrounded and who, as evidenced by the officers’ own actions, had not drawn his gun or otherwise endangered his-—or his fellow officers’—safety. I, therefore, conclude that Officer Waters’ deployment of the dog in this case is not readily distinguishable from the unlawful deployment in Kopf and would hold that Waters is not entitled to qualified immunity.*
As the majority aptly notes, this is a tragic case. I, however, cannot join the majority in concluding that Rodgers’ actions in bringing about this encounter justified Officer Waters’ subsequent response. Ultimately, viewing the evidence in the light most favorable to the decedent, I believe a jury could conclude that Rodgers got out of his vehicle with empty hands in an attempt to surrender. Although it is undisputed that Rodgers eventually drew a gun, a jury could reasonably find that he did so only after he was attacked by the dog—and only then, in a desperate attempt to defend that attack. But for Officer Waters’ unwarned deployment of the dog, this tragedy may have been averted.
I respectfully dissent in part.

 The unlawfulness of deploying a dog without prior warning in these circumstances was clearly established by our decision in Kopf, which this court decided eleven years before the events giving rise to this case occurred. Thus, I would also conclude that the decedent has satisfied the second element for defeating qualified immunity as to Officer Waters.